JAMES E. DAVENPORT,                          *
4303 Lancewood Court
Beltsville, MD 20705
                                             *
            Plaintiff,

       v.                                    *

SALLIE MAE, INC.
2001 Edmund Halley Drive                     *
Reston, VA 20191,

SLM CORPORATION                              *
300 Continental Drive
Newark, DE 19713,
                                             *
EQUIFAX, INC.
32 South Street
Baltimore, MD 21202 ,                        *

EQUIFAX INFORMATION SERVICES,
LLC                                          *
1550 Peachtree Street, NW
Atlanta, GA 30309,
                                             *
EXPERIAN DATA CORP.
475 Anton Blvd.
Costa Mesa, CA 92626,                        *

EXPERIAN INFORMATION
SOLUTIONS, INC.                              *
505 City Parkway West
Orange, CA 92668,
                                    &        *
TRANS UNION, LLC
103 Centre Road
Wilmington, DE 19805                         *
            Defendants.
************************************************************************

<u>COMPLAINT</u>

(Violation of Federal Fair Credit Reporting Act, violation of Federal Fair Debt Collection Practices Act, violation of Maryland statutes regulating consumer credit reporting agencies, violation of Maryland Consumer Debt Collection Act, the Maryland Consumer Protection Act, Malicious Defamation, Interference with Contract, Interference with Economic Relationship, Injurious Falsehood, Injurious Falsehood Amounting to Defamation, Intentional Infliction of Emotional Distress, Civil Conspiracy, and Breach of Contract.)

The Plaintiff, JAMES E. DAVENPORT (hereafter the "Plaintiff" or "Mr. Davenport"), by and through undersigned counsel, Paul R. Rivera, Esq., as and for his complaint against the defendants SALLIE MAE, INC. and SLM CORPORATION (collectively referred to hereafter as "SLMA" or "SLMA Defendants"), EQUIFAX INFORMATION SERVICES, LLC and EQUIFAX, INC. (collectively referred to hereafter as "Equifax" or "Equifax Defendants"), EXPERIAN INFORMATION SOLUTIONS, INC. and EXPERIAN DATA CORP. (collectively referred to hereafter "Experian" or "Experian Defendants"), and TRANS UNION LLC, (hereafter "Trans Union") alleges as follows, upon information and belief:

<u>PRELIMINARY STATEMENT</u>

1.    This is an action for actual, statutory and punitive damages and statutory attorney's fees brought pursuant to the Fair Credit Reporting Act ("FCRA")(15 U.S.C. § 1681 *et seq.*), Maryland statutes regulating consumer credit reporting agencies (hereafter referred to "MSRCCRA") (Ann.Code Md., Commercial Law §14-1201 *et seq.*), the Fair Debt Collection Practices Act ("FDCPA")(15 U.S.C.

§ 1692 *et seq.* ),  the Maryland Consumer Debt Collection Act ("MCDCA"), (Ann. Code Md,

Commercial Law §14-201, *et seq.*), and the Maryland Consumer Protection Act ("MCPA") (Ann.Code

Md., Commercial Law §13-301 *et seq..).*

2.    In addition, the Plaintiff seeks actual and punitive damages on his common law pendant

state claims for Malicious Defamation (against all Defendants), Interference with Contract, Interference

with Economic Relationship, Injurious Falsehood, Injurious Falsehood Amounting to Defamation, Civil

Conspiracy (against all Defendants), Intentional Infliction of Emotional Distress, and Breach of Contract

(against SLMA).

3.    SLMA violated the FCRA by failing to conduct a proper investigation of the Plaintiff's

disputes he had filed with the credit reporting agency defendants.  Those disputes claimed that the

Plaintiff had not been delinquent ("90 days past due") in his obligation to make payments to SLMA,

contrary to what was appearing on his credit reports.  SLMA failed to review all relevant information

purportedly provided to it by such credit reporting agency defendants and it failed to direct such

consumer reporting agencies to delete inaccurate information about the Plaintiff from the files

maintained by them.

4.    In addition, SLMA willfully and maliciously defamed the Plaintiff by repeatedly reporting

information about him to various third parties which it knew, or reasonably should have known, was

false.   As a result of such actions and conduct, the Plaintiff suffered damage, which he is permitted to

recover for in this action and he is also entitled to an award of punitive damages.

5.    SLMA's actions and/or omissions also violated the Maryland statutes regulating consumer

credit reporting agencies (MSRCCRA), the Maryland Consumer Debt Collection Act,  and constituted

tortious conduct in the ways of Malicious Defamation, Interference with Contract, Interference with

Economic Relationship, Injurious Falsehood, Injurious Falsehood Amounting to Defamation, Intentional Infliction of Emotional Distress, Civil Conspiracy, and Breach of Contract

6.      Equifax, Experian and Trans Union (hereafter collectively referred to as "the credit reporting agency Defendants" or "the CRA Defendants") violated the FCRA and MSRCCRA by failing to follow reasonable procedures to assure maximum possible accuracy when preparing credit reports purportedly concerning the Plaintiff. The credit reporting agency defendants also violated the FCRA and MSRCCRA by repeatedly issuing credit reports to various third-parties, purportedly pertaining to the Plaintiff, which contained an erroneous "tradeline entry" which incorrectly reported Plaintiff as having been delinquent, despite having received actual notice, on repeated occasions, that such entry was inaccurate.

7.      The credit reporting agency defendants repeatedly violated their obligation under the FCRA and MSRCCRA to properly investigate disputed items in the Plaintiff's credit file maintained by them.

8.      The credit reporting agency defendants defamed the Plaintiff and violated his privacy by repeatedly publishing to third-parties information purportedly about him which was false and which caused him to suffer injury.

9.      SLMA and one or more of the credit reporting agency Defendants named in this Complaint, by their respective actions and/or omissions formed a civil conspiracy to deny Plaintiff his legal rights.

10.    The credit reporting agency defendants provided the Plaintiff's credit report, containing erroneous information, to third-parties, who then used such reports to make creditworthiness determinations about him and, as a result, his credit score was adversely affected and his current credit standing with his legitimate creditors was adversely affected.

11.   The credit reporting agencies negligently and/or willfully violated various provisions of the FCRA and MSRCCRA, as set forth herein, and the Plaintiff is thereby entitled to an award of punitive damages pursuant to the FCRA and/or the MSRCCRA.

12.   The credit reporting agency defendants also willfully and maliciously defamed the Plaintiff by repeatedly reporting information about him to various third parties which they knew, or reasonably should have known, was false.   As a result of such actions and conduct the Plaintiff suffered damage which he is permitted to recover for in this action and he is also entitled to an award of punitive damages.

13.   SLMA violated the FDCPA and/or the MCDCA by failing and refusing to respond to the dispute filed on behalf of the Plaintiff, failing and refusing to provide verification of the alleged delinquency in response to a request for same, and by reporting the Plaintiff as having been in a delinquent and/or past-due status which was known or which should have been known to be false, and for reporting such status without a notation that this status was disputed by Plaintiff.

14.   SLMA committed unfair and deceptive acts against the Plaintiff in the course of its business in violation of the MCPA.

15.   The Plaintiff  further alleges that as a direct and proximate result of the each of the Defendants' individual and/or collective actions, conduct and/or omissions, he suffered actual damage including, but not limited to, damage to his existing credit accounts, damage to his reputation, emotional distress, annoyance, aggravation, frustration, and legal fees to prosecute the violations of, and secure the Defendants' compliance with the FCRA, MSRCCRA, FDCPA, MCDCA., and the MCPA.


JURISDICTION AND VENUE

16. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p). This Court has supplemental jurisdiction of the state law claims asserted herein under 28 U.S.C. § 1367(a) and pendant jurisdiction over the state common law claims asserted herein. Venue is properly laid pursuant to 28 U.S.C. § 1391(b).

PARTIES

17. The Plaintiff is an adult resident of the State of Maryland, city of Beltsville, County of Prince George's.

18. The Plaintiff is a "consumer" within the meaning of the FCRA (15 U.S.C. § 1681a(c) as well as within the meaning of the FDCPA (15 U.S.C. § 1692a(3)), the MSRCCRA (Ann. Code Md., Comm'l Law §14-1201(c)), and is a "person" under the MCDCA (Ann. Code Md., Comm'l Law §14-201(d)) and the MCPA.

19. The business dealings between Plaintiff and SLMA come under the definition of a "consumer transaction", as defined under the MCDCA, (Ann. Code Md., Comm'l Law §14-201(c)) and both "consumer credit" and "consumer debt" under the MCPA.

20. SALLIE MAE, INC. is a Virginia corporation duly authorized and qualified to do business in the State of Maryland.

21. SLM CORPORATION is a Delaware corporation duly authorized and qualified to do business in the State of Maryland.

22. Both Sallie Mae, Inc. and SLM Corporation (the "SLMA Defendants") meet the definition of a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2 *et seq.*), that

regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer; in addition, the SLMA Defendants are each a "person" under MSRCCRA (Ann. Code Md., Comm'l Law §14-1201(j)).

23. Both Sallie Mae, Inc. and SLM Corporation (collectively "SLMA") meet the definition of a "debt collector" within the meaning of the FDCPA (15 U.S.C. § 1692a(6)) and a "person" under the MCDCA (Ann. Code Md., Comm'l Law §14-201(d)).

24. EQUIFAX, INC., is a Maryland corporation, duly authorized and qualified to do business in the State of Maryland.

25. EQUIFAX INFORMATION SERVICES, LLC is a Georgia limited liability company, duly authorized and qualified to do business in the State of Maryland.

26. Both EQUIFAX, INC. and EQUIFAX INFORMATION SERVICES, LLC (collectively "Equifax") meet the definition of a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) in that they are regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports as defined in Section 1681a(d) of the FCRA, to third parties; the Equifax Defendants are each a "consumer reporting agency" under the MSRCCRA (Ann. Code Md., Comm'l Law §14-1201(e)).

27. EXPERIAN INFORMATION SOLUTIONS, INC. is a California corporation, duly authorized and qualified to do business in the State of Maryland.

28. EXPERIAN DATA CORP. is a California corporation, duly authorized and qualified to do business in the State of Maryland.

29. Both EXPERIAN INFORMATION SOLUTIONS, INC. and EXPERIAN DATA CORP (collectively "Experian") meet the definition of a "consumer reporting agency" within the meaning of

the FCRA (15 U.S.C. § 1681a(f)) in that they are regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports as defined in Section 1681a(d) of the FCRA, to third parties; the Experian Defendants are each a "consumer reporting agency" under the MSRCCRA (Ann. Code Md., Comm'l Law §14-1201(e)).

30.  Trans Union is a Delaware limited liability company, duly licensed and qualified to do business in the State of Maryland.

31.  Trans Union is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) in that it is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports as defined in Section 1681a(d) of the FCRA, to third parties; Experian is a "consumer reporting agency" under the MSRCCRA (Ann. Code Md., Comm'l Law §14-1201(e)).

## HISTORICAL BACKGROUND

32.  On or about July 19, 2006, Plaintiff signed a Promissory Note (hereafter "Note") as part of an application to SLMA for a loan (hereafter "the loan")in order to help finance a college education for his daughter, Ms. Staci Davenport (hereafter "Ms. Davenport"), to pursue post-secondary studies at Union College in Lincoln, Nebraska.

33.  The referenced loan solicited from SLMA by Plaintiff was a "Parent Plus Loan" ("PPL") under the Federal Family Educational Loan Program ("FFELP").

34.  The terms of the loan included, inter alia, that repayment of the loan principal would be deferred while Ms. Davenport was enrolled in her post-secondary studies, that interest accruing on the loan during her enrollment would be added to the principal loan amount ("capitalization"), and that

repayment of the loan was to begin upon expiration of the deferment period, approximately six months after Ms. Davenport's graduation.

35.  On or about December 4, 2006, loan funds pursuant to Plaintiff's loan application were disbursed by SLMA in the amount of $6,800 (six thousand, eight hundred dollars) to Union College.

36.  Ms. Davenport was continuously enrolled in Union College pursuing her post-secondary studies beginning in the fall of 2006 until her graduation in May of 2010.

37.  Beginning in early 2007, and periodically thereafter through approximately June 2010, SLMA would telephone Plaintiff and assert that he was "past-due" on the loan repayments.

38.  Plaintiff would always dispute this assertion by reminding SLMA that Ms. Davenport was currently enrolled in her post-secondary studies and that the loan repayment was accordingly in a status of deferment and/or forbearance.

39.  In the course of these several telephone conversations between SLMA and Plaintiff, there ensued a series of "verbal wrestling matches" wherein Plaintiff firmly asserted deferment/forbearance, and wherein SLMA representatives made all manner of incorrect, inconsistent, and contradictory statements concerning Plaintiff's eligibility, entitlement, or enrollment in a status of deferment or forbearance.

40.  Ultimately, during the course of these contentious telephone conversations, SLMA would ultimately agree to defer/forbear loan repayments for the period of one (1) year, and follow up in written correspondence to Plaintiff confirming such terms of deferment/forbearance.

41.  On or about February 19, 2007, SLMA mailed correspondence to Plaintiff in which it granted its first forbearance of the Note, confirming that repayment of the loan would be deferred for a period of twelve (12) months.

42. On or about February 19, 2008, SLMA mailed correspondence to Plaintiff in which it granted its second forbearance of the Note, confirming that repayment of the loan would be deferred for an additional period of twelve (12) months.

43. On or about April 7, 2009, SLMA mailed correspondence to Plaintiff indicating that forbearance of the Note was still in effect, confirming that repayment of the loan would be deferred until 2/19/10.

44. On or about September 1, 2009, SLMA mailed correspondence to Plaintiff indicating that forbearance of the Note was still in effect, confirming that repayment of the loan was currently being deferred.

45. On or about January 4, 2010, SLMA mailed correspondence to Plaintiff indicating that it had "updated the terms of the loan", and that the first payment of the loan was now due on <u>March 18, 2010</u>.

46. On March 18, 2010, SLMA's first putative repayment date under the "updated terms of the loan", Ms. Davenport was still enrolled at Union College, and was not scheduled to graduate until May 2010.

47. Over the course of February and March, 2010, SLMA followed its previous pattern of contacting Plaintiff several times by phone, each time asserting that the loan was "past-due", and then after more "verbal wrestling matches" with Plaintiff, ultimately resolving the issue by deferment/forbearance of payment until after Ms. Davenport's graduation.

48. On or about April 2, 2010, SLMA mailed correspondence to Plaintiff in the form of an "Invoice" indicating that Plaintiff's putative payment of March 2010 was now overdue, assessed him a

late fee, claimed a total amount due of $232.43, and further advised him that the next payment was due 4/18/2010.

49.   Promptly upon receipt of SLMA's 4/2/10 correspondence, Plaintiff contacted SLMA to address its erroneous assertion that he was past-due in loan payments.   After pointing out that Ms. Davenport was still actively studying at Union College, and other salient points of fact, SLMA telephone representative(s) conceded that in fact Plaintiff was not past-due, and SLMA's telephone representative(s) also confirmed deferment/forbearance of the Note through December of 2010.

50.   On or about April 9, 2010, SLMA contacted Plaintiff by telephone and alleged that he was past-due on his repayment obligations for the loan.

51.   In the course of the April 9, 2010 telephone contact between Plaintiff and SLMA, SLMA's telephone representative(s) confirmed deferment/forbearance of the Note through December of 2010.

52.   Notwithstanding the referenced telephone contact on April 9, 2010, SLMA mailed its first correspondence to Plaintiff dated April 9, 2010, in which SLMA stated that forbearance had in fact been applied to Plaintiff's account "for a ten month period beginning 2/19/09" (emphasis added).

53.   The first 4/9/10 correspondence clearly must have set forth a clerical typographical error in approving forbearance "for a ten month period beginning 2/19/09" (emphasis added).  This is so given the context of the parties' telephone conversation of April 9, 2010 resulting in a confirmation of deferment/forbearance, SLMA's previous correspondence (dated 4/7/09) wherein forbearance had already been approved for a "12 month period beginning 2/19/09", and another of SLMA's prior correspondence (dated 9/1/09) wherein ongoing forbearance had already been acknowledged.

54.   The first April 9, 2010 letter should have stated that forbearance was approved for  "for a ten month period beginning 2/19/10" (emphasis added).  This would have been consistent with the

telephone conversation of the same date in which defer/forbearance was approved through December 19, 2010, a period six (6) months after Ms. Davenport's graduation from post-secondary studies at Union College, as well as SLMA's prior correspondence of 4/7/09 and 9/1/09 wherein forbearance was already in effect for the period of 2009.

55.   To confuse matters even further, SLMA mailed to Plaintiff a second correspondence also dated April 9, 2010, in which the newly updated due date for repayment to begin was now <u>May 18, 2010</u>.  This contradicted the accord reached in the parties' telephone conversation of 4/9/10 (for deferment/forbearance through December 2010) as well as the intent and wording of SLMA's first letter dated 4/9/10.

56.   On May 18, 2010, SLMA's second putative repayment date under the "updated terms of the loan", Ms. Davenport would have just graduated from Union College, and the automatic six-month post-graduation deferment period would have just begun to take effect.

57.   On or about April 16, 2010, SLMA mailed correspondence to Plaintiff indicating that Plaintiff's account was in a "60 Days Delinquent" status, asserted a total amount due of $334.95, and that Plaintiff needed to act immediately to avoid "damage to his credit."

58.   On or about April 19, 2010, SLMA mailed correspondence to Plaintiff in which it acknowledged Plaintiff's efforts in "reaching out to (SLMA)", and set forth "repayment options" including deferment and forbearance.

59.   On April 22, 2010, Plaintiff transmitted correspondence to SLMA via facsimile in which he contested and disputed SLMA's invoice dated 4/16/2010, and reiterated the substance of the parties' telephone contact of 4/9/10 in which forbearance of the Note was extended until December 2010.

60. On April 24, 2010 Plaintiff transmitted correspondence to SLMA via facsimile in which he again contested and disputed SLMA's invoice dated 4/16/2010, and reiterated the substance of the parties' telephone contact of 4/9/10 in which forbearance of the Note was extended until December 2010.

61. On or about April 26, 2010, SLMA mailed correspondence to Plaintiff in the nature of a "past due notice" for repayment of the loan, while also indicating that deferment and/or forbearance was available upon request.

62. On or about May 18, 2010, SLMA mailed correspondence to Plaintiff alleging a total then past-due balance of $558.25, and further stating, inter alia, "WE HAVE REPORTED YOUR DELINQUENCY TO THE CONSUMER CREDIT REPORTING AGENCIES…. Your account has been reported to the consumer credit reporting agencies and appears on your credit record. Your Credit rating has been damaged."

63. Upon information and belief, SLMA reported Plaintiff to the credit reporting agencies as being 90-days delinquent in repayment of the loan sometime during the month of May 2010.

64. Plaintiff was not notified about SLMA's negative report to the credit reporting agencies until on or about May 24, 2010 when he received the correspondence from SLMA dated 5/18/10.

65. Upon information and belief, SLMA has since the month of May 2010 and up through the present time, continued to regularly report, verify, and/or failed to correct the false information furnished to the credit reporting agencies that in April 2010 Plaintiff was delinquent and/or 90-days past-due in his repayment of the loan.

66. SLMA has been the subject of complaints by multiple customers for its failure to properly administer student loan accounts.

67.  SLMA has a past history of inaccurate reporting of consumer information to the credit reporting industry.

68.  Credit reporting agencies, including those named as defendants herein, know or have reason to know of SLMA's history of inaccurate consumer credit reporting.

69.  Credit reporting agencies, including those named as defendants herein,  are or should be on notice that consumer credit disputes of alleged inaccurate information furnished by SLMA  deserve heightened attention in light of SLMA's past history of inaccurate consumer credit reporting.

70.  Upon information and belief, all of the named credit reporting agency Defendants (Equifax, Experian, and Trans Union) have since the month of May 2010 and up through the present time, continued to regularly report the false information furnished to them by SLMA that in April 2010 Plaintiff was delinquent and/or 90-days past-due in his repayment of the loan.

71.  On or about May 24, 2010, Plaintiff sent correspondence to SLMA via facsimile in which he again disputed SLMA's repeated false assertions that he was delinquent in repayment of the loan, and urged SLMA to refer to its own prior correspondence and recorded phone calls with Plaintiff establishing that the loan was in a status of forbearance.

72.  On or about May 24, 2010, Plaintiff initiated an online dispute of the derogatory information reported by SLMA with Defendant Experian, through its website designated for consumer disputes. Experian assigned order number 2678-3566-43 to this dispute.

73.  By way of correspondence dated May 26, 2010, SLMA apparently sought to retract prior information given to Plaintiff with regard to deferment/forbearance, now stating that Plaintiff's loan was not eligible for student deferment.

74.   On or about June 18, 2010, in a telephone conversation with SLMA, Plaintiff sought to clarify all the contradictory information and positions of SLMA taken in prior communications.  During this phone call Plaintiff confirmed with SLMA that despite its prior correspondence, there was no delinquent amount currently past-due, there was no amount currently due (under terms of deferment/forbearance), and there were no late fees due either.

75.   Notwithstanding SLMA's clear statements to Plaintiff on or about June 18, 2010, Plaintiff began making early payments toward repayment of the loan on or about the same day, out of an abundance of caution, and despite his entitlement to a further 6 month grace period of deferment/forbearance which had been acknowledged by SLMA.  In making these early payments, Plaintiff also sought to counteract SLMA's false reports to the credit reporting agencies of his alleged delinquency.

76.   SLMA's correspondence repeatedly referenced that Plaintiff would receive a coupon booklet in the mail in order to facilitate loan payments.

77.   SLMA had not provided a payment coupon booklet to Plaintiff at any time before Plaintiff's first payment towards the loan obligation, in June of 2010.

78.   Indeed at the time of this first payment, by not having received the payment coupon book promised by SLMA, Plaintiff did not even know to which address he should mail his payment, nor did he know SLMA's latest monthly payment amount required, nor SLMA's latest payment due date.  Given SLMA's reliably-inconsistent statements on these matters, Plaintiff had to contact SLMA by telephone to obtain and verify this information prior to making his first payment.

79.   Since the date of Plaintiff's first repayment installment tendered in June 2010, Plaintiff has made timely payments to SLMA on each successive month..

80.   On or about June 21, 2010, a longtime creditor of Plaintiff's (Citibank) notified him in writing that his longstanding business line of credit (account ending in 6566)  in the amount of $50,000 was being closed due to items appearing on his credit report obtained from Equifax.

81.   On or about June 24, 2010, as Plaintiff's online dispute with Experian was pending, SLMA updated its derogatory report concerning Plaintiff to indicate that his account was (or had been) in a 90-day past due status.

82.   SLMA re-verified the false reporting of Plaintiff's delinquency to Experian.

83.   On or about June 24, 2010, Experian notified Plaintiff that the "90 days past due as of Apr 2010" notation was verified.  Experian then merely and simply relayed and forwarded the information back to third parties through its credit reporting database.

84.   Experian failed in its duty to reinvestigate the dispute initiated by Plaintiff.

85.   On or about July 21, 2010, Plaintiff's credit card (Chase account ending in 2681) was presented for payment of a meal at a restaurant in Maryland, but was refused and rejected due to the card issuer declining payment of the charge.  Plaintiff subsequently learned that Chase had cancelled the credit card, but he did not receive notice in time to avert this embarrassing, humiliating, and stressful situation.

86.   On or about July 26, 2010, another creditor of Plaintiff's (Chase) notified him that his business line of credit (account ending in 0074) in the amount of $33,100 was being reduced to $21,600 due to items appearing on his credit report obtained from Experian.

87.   On or about July 26, 2010, another creditor of Plaintiff's (Chase) notified him that his business line of credit (account ending in 2681) in the amount of $18,000 was being was being closed due to items appearing on his credit report obtained from Experian.

88.   On or about July 29, 2010, another creditor of Plaintiff's (Bank of America) notified him that his business line of credit (account ending in 4439) in the amount of $50,000 was being reduced to $1,900 due to items appearing on his credit report obtained from Trans Union.

89.   Plaintiff was travelling in California during the period when the Bank of America notice dated 7/29/10 was mailed to him, and thus did not actually receive this written notice of the reduction until some weeks later.  Meanwhile, on or about August 4, 2010, Plaintiff's credit card was presented for purchase of a mattress at a retail store in California, but was refused and rejected due to the card issuer declining payment of the charge. Thus Plaintiff did not receive notice timely enough to avert this embarrassing, humiliating, and stressful situation.

90.   Plaintiff immediately contacted Bank of America with regard to the declining of payment that took place on or about 8/4/2010.  Plaintiff was then informed verbally of the credit reduction action. In fact, Bank of America had reduced the credit line to an amount that was actually below the balance then owing on the account.  Plaintiff was forced to scramble and request that the credit limit be raised to approximately $2,500 so that over-limit fees would not be incurred by virtue of the credit reduction action.

91.   On or about August 11, 2010, Plaintiff initiated an online dispute of the derogatory information reported by SLMA with Defendant Trans Union, through its website designated for consumer disputes.  Trans Union assigned order number <u>12A6492ABDB810C</u> to this dispute.

92.   SLMA re-verified the false reporting of Plaintiff's delinquency to Trans Union.

93.   On or about August 29, 2010, Trans Union notified Plaintiff that the "90 days past due as of Apr 2010" notation was verified.  Trans Union then merely and simply relayed and forwarded the information back to third parties through its credit reporting database.

94.   Trans Union failed in its duty to reinvestigate the dispute initiated by Plaintiff.

95.   In or about July/August 2010, Plaintiff initiated an online dispute of the derogatory information reported by SLMA with Defendant Equifax, through its website designated for consumer disputes.  Equifax assigned order number 1-5913841700 to this dispute.

96.   SLMA re-verified the false reporting of Plaintiff's delinquency to Equifax.

97.   On or about August 23, 2010, Equifax notified Plaintiff that the "90-119 days past due of 04/2010" notation was verified.  Equifax then merely and simply relayed and forwarded the information back to third parties through its credit reporting database.

98.   Equifax failed in its duty to reinvestigate the dispute initiated by Plaintiff.

99.   On October 5, 2010, Plaintiff again disputed the derogatory information with each of the defendant credit reporting agencies by submitting written correspondence with attached documentation submitted by U.S. mail.

100.  SLMA re-verified the false reporting of Plaintiff's delinquency to each of the credit reporting agency Defendants, Equifax, Experian, and Trans Union..

101.  On October 13, 2010, Defendant EQUIFAX reported that it had completed its investigation of Plaintiff's dispute dated 10/5/10, and that it had determined that the 90-day past due item would remain on Plaintiff's credit report.

102.  Equifax then merely and simply relayed and forwarded the information back to third parties through its credit reporting database.  Equifax failed in its duty to reinvestigate the dispute initiated by Plaintiff.

103. On October 14, 2010, Defendant TRANS UNION reported that it had completed its investigation of Plaintiff's dispute dated 10/5/10, and that it had determined that the 90-day past due item would remain on Plaintiff's credit report.

104. Trans Union then merely and simply relayed and forwarded the information back to third parties through its credit reporting database. Trans Union failed in its duty to reinvestigate the dispute initiated by Plaintiff.

105. Defendant EXPERIAN failed to respond to the written dispute submitted by Plaintiff on October 5, 2010.

106. In the alternative, Experian merely and simply relayed and forwarded the information back to third parties through its credit reporting database. Experian failed in its duty to reinvestigate the dispute initiated by Plaintiff.

107. Each of the named credit reporting agency Defendants failed to properly evaluate and/or consider the information submitted by Plaintiff to them, and did not make any reasonable attempt to substantially or reasonably verify the delinquency reported to them by SLMA.

108. Each of the named credit reporting agency Defendants failed to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful re-investigation; by failing to forward all releveant information to SLMA; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source (SLMA) it has reason to know is unreliable.

109. SLMA has continued to furnish the credit reporting agency Defendants ("CRA Defendants") with inaccurate information alleging that Plaintiff was delinquent in April 2010, without noting that this allegation is disputed.

110.  SLMA failed to fully and properly investigate Plaintiff's dispute of the alleged delinquency; failed to review all relevant information regarding the dispute; failed to respond accurately to the CRA Defendants' reinvestigations of the dispute; failed to correctly report results of an accurate investigation to every other CRA; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the alleged delinquency to the CRAs.

111.  In May 2012, SLMA again acknowledged in written correspondence, that Plaintiff's loan was in a status of forbearance between February 19, 2007 and May 18, 2010.

112.  Given that SLMA has acknowledged multiple times that Plaintiff's loan was still in forbearance through May 18, 2010, then Plaintiff could not possibly have been delinquent or past-due in his payments during the month of April 2010.

113.  On or about April 16, 2011, Plaintiff applied for a loan to purchase an automobile at Antwerpen Toyota-Hyundai, 12320 Auto Drive, Clarksville, MD.  Plaintiff's loan application was turned down due to the auto dealer's bank or finance company would not approve his credit.  The denial of credit letter states that the decision was based upon items appearing on his credit report obtained from Equifax.

114.  On or about August 3, 2006, Plaintiff incorporated a business entity, "Life on Sports, Inc.", with the purpose of offering sporting goods for sale to the public.  Plaintiff started this business venture with the knowledge and confidence that he had sufficient business lines of credit upon which to draw for the growth and operation of the business entity.

115.  On or about April 6, 2011, a potential supplier (Navico America) for Plaintiff's business entity ("Life on Sports, Inc."), Navico America, informed Plaintiff that it required a $50,000 annual sales commitment to approve a direct account for Life on Sports, Inc.

116.  In January of 2012, Plaintiff dissolved "Life on Sports, Inc.", due to his inability to operate it without lines of credit, which had been either revoked or reduced due to derogatory credit report items, and thus losing an important business opportunity.

117.  On or about January 11, 2012, Plaintiff received notice that his automobile insurance premium with Allstate Insurance Company ("Allstate") was going to be increased from $1,548.99 to $1,631.25 per six (6) months.  Given Plaintiff's monthly payment plan with Allstate, monthly payments were now to be increased from $259.17 to $272.88.

118.  Upon information and belief, the increase in Plaintiff's Allstate insurance premium was due, in part, to derogatory items appearing on his credit report obtained from the credit reporting agencies, including the credit reporting agency Defendants named in this lawsuit.

119.  As a result of the premium increase from Allstate, Plaintiff decided to shop around for a more competitive automobile insurance rate, and sought a quote from GEICO Insurance Company ("GEICO").  After applying to GEICO, Plaintiff received correspondence from GEICO indicating that his premium rate would be higher than normal due to items appearing on his credit report obtained from Trans Union.

120.  In or about June 2010, another creditor of Plaintiff's (American Express) notified him that his line of credit (account ending in 1008) in the amount of $20,000 was being reduced to $12,100 due to items appearing on his credit report obtained from one or more of the credit reporting agency Defendants.

121.  Plaintiff's line of work requires access to confidential controlled information and extensive background checks, including his personal finances, and more specifically his consumer credit record, to determine character and employability, inter alia.  Factors contained in his consumer credit records,

including but not limited to derogatory credit information, high balances, and high debt ratio, are considered in decisions by employers to hire, retain, promote, demote, reward, or discharge employees in Plaintiff's field.  As such, maintaining satisfactory, or above-satisfactory, credit is a crucial asset to Plaintiff in order to make a living.

122.  Since May 2010, Plaintiff applied for a position with a private company that contracts with the federal government.  The position for which Plaintiff applied required security clearance.  Plaintiff interviewed for the position, but ultimately was not hired.

123.  Since May 2010, In the Plaintiff has also applied for multiple intra-company transfers or re-assignments with his present employer, but these have also been denied.

124.  Upon information and belief, the adverse employment decisions that Plaintiff has experienced have been due in part or in whole to the derogatory and false credit information furnished by SLMA, and reported by the named credit agency Defendants, as well as the subsequent consequences occasioned by all named Defendants resulting in the reduction of credit by several of Plaintiff's creditors.

125.  Upon information and belief, the derogatory and false credit information furnished by SLMA, and reported by the named credit agency Defendants, as well as the subsequent consequences occasioned by all named Defendants resulting in the reduction of credit by several of Plaintiff's creditors, has soiled and/or damaged Plaintiff's reputation.

126.  Upon information and belief, the derogatory and false credit information furnished by SLMA, and reported by the named credit agency Defendants, as well as the subsequent consequences occasioned by all named Defendants resulting in the reduction of credit by several of Plaintiff's creditors, has caused Plaintiff both pecuniary and non-pecuniary damages.

127.  The personal credit problems caused by the named Defendants have proximately caused significant economic losses as well as significant mental and emotional distress, great concern and worry to Plaintiff and his family over being able to keep his job, to seek promotions or transfers within his current employment, to seek other outside employment, to be able to keep up with ongoing living expenses, to be able to purchase business equipment to enhance his professional productivity, to apply for further credit, to be able to refinance his principal residence and obtain a lower interest rate,  being denied credit, having adverse action taken against existing credit accounts, to be able to continue to assist his children in their education and otherwise give them financial support, to be able to provide financial assistance to his other relatives in need. All of the foregoing circumstances have together caused Plaintiff and his family great mental, psychological, and emotional stress and anguish.

128.  All named Defendants have each failed in their respective duties to prevent foreseeable injury to Plaintiff.

129.  All named Defendants have each invaded the privacy of Plaintiff.

## COUNTS OF LIABILITY AGAINST SLMA

### COUNT I.

(Negligent failure to conduct proper investigation of consumer dispute, to review all relevant information provided by credit reporting agencies ("CRAs"), and to direct CRAs to delete inaccurate information)

130.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

131.  After being informed by the credit reporting agencies that the Plaintiff disputed the accuracy of the information it was providing, SLMA negligently failed to conduct a proper investigation

of the Plaintiff's dispute pertaining to the  Account filed with the three national consumer reporting agencies, as required by 15 U.S.C. § 1681s-2(b)(A).

132.  SLMA negligently failed to review all relevant information purportedly provided by such credit reporting agencies to SLMA in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

133.  SLMA negligently failed to direct such consumer reporting agencies to delete inaccurate information about the Plaintiff pertaining to the Account, as required by 15 U.S.C. § 1681s-2(b)(C).

134.  The Plaintiff has a private right of action to assert claims against SLMA arising under 15 U.S.C. § 1681s-2(b).

135.  SLMA is liable to the Plaintiff for the actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o.

## COUNT II.

(Willful failure to conduct proper investigation of consumer dispute, to review all relevant information provided by CRAs, and to direct CRAs to delete inaccurate information)

136.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

137.  After being informed by the credit reporting agencies that the Plaintiff disputed the accuracy of the information it was providing, SLMA willfully failed to conduct a proper investigation of the Plaintiff's dispute, filed with three national consumer reporting agencies, that he was not liable for the Account appearing on his credit reports, as required by 15 U.S.C. § 1681s-2(b)(A).

138.  SLMA willfully failed to review all relevant information purportedly provided by such credit reporting agencies to SLMA in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

139.  SLMA willfully failed to direct such consumer reporting agencies to delete inaccurate information about the Plaintiff pertaining to the  Account as required by 15 U.S.C. § 1681s-2(b)(C).

140.  The Plaintiff has a private right of action to assert claims against SLMA arising under 15 U.S.C. § 1681s-2(b).

141.  SLMA is liable to the Plaintiff for the actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

## COUNT III.

(Malicious defamation by knowing publication of erroneous information to third parties)

142.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

143.  SLMA maliciously defamed the Plaintiff by its knowing publication to third-parties of erroneous information that the Plaintiff was delinquent and/or "90 days past-due" in the repayment of the loan.

144.  SLMA had actual knowledge of the false and fraudulent nature of such information and published it despite having such knowledge.

145. SLMA's actual knowledge of the falsity and/or reckless disregard for the truth demonstrates its malice and/or willful intent to injure the Plaintiff.

146. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

147. SLMA is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct.

148. The Plaintiff is entitled to an award of punitive damages from SLMA in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNT IV.

(Violation of federal Fair Debt Collection Practices Act ("FDCPA"),(15 U.S.C. §1692, *et seq.*)

149. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

150. Plaintiff is an individual consumer under the FDCPA.

151. SLMA is a corporate entity, or other juristic person or entity, engaged in the business of collecting debts in the State of Maryland, with its principal place of business in Delaware.

152. One of SLMA's purposes is the collection of debts using both the U.S. Postal Service mail and telephone, and SLMA regularly attempts to collect debts alleged to be due to it from others.

153. SLMA is a "debt collector" under the FDCPA, 15 U.S.C. §1692a(6).

154. In or about early 2007, SLMA began contacting Plaintiff by both the U.S. Postal Service mail and telephone, and accusing him of having missed payments and or otherwise being delinquent with respect to his obligation to repay the loan he incurred for Ms. Davenport's studies.

155. Plaintiff disputed the alleged late payments with SLMA on several occasions, over the telephone, by the U.S. Postal Service mail, and by facsimile transmission.

156. Despite Plaintiff's repeated disputes of his alleged late payments, SLMA proceeded to subsequently report Plaintiff as delinquent in furnishing information to the credit reporting agencies also named as defendants in this lawsuit

157. In or about May 2010, and since then in monthly or other regular intervals, SLMA has furnished information to credit reporting agencies regarding Plaintiff's alleged late payment history, without noting that Plaintiff disputed the alleged late payments.

158. SLMA violated FDCPA by communicating and/or threatening to communicate false information prohibited by 15 U.S.C. §1692e(8), and further by failing to note that the information was disputed by the consumer.

159. As a result of the above violation of the FDCPA, SLMA is liable to Plaintiff for declaratory judgment that SLMA's conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, and costs and reasonable attorney's fees.

## COUNT V.

(Violation of Maryland Consumer Debt Collection Act ("MCDCA") (Ann. Code Md, Commercial Law, §14-201, *et seq.*) and Maryland Consumer Protection Act ("MCPA") (Ann. Code Md, Commercial Law, §13-301, *et seq.*))

160. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

161. Plaintiff is an individual person involved in a "consumer transaction", as defined under Ann. Code Md, Commercial Law, §14-201.

162. SLMA is a corporate entity, or other juristic person or entity, engaged in the business of collecting debts in the State of Maryland, with its principal place of business in Delaware.

163. One of SLMA's purposes is the collection of debts using both the U.S. Postal Service mail and telephone, and SLMA regularly attempts to collect debts alleged to be due to it from others.

164. SLMA is a "collector" under Ann. Code Md, Commercial Law, §14-201.

165. In or about early 2007, SLMA began contacting Plaintiff by both the U.S. Postal Service mail and telephone, and accusing him of having missed payments and or otherwise being delinquent with respect to his obligation to repay the loan he incurred for Ms. Davenport's studies.

166. Plaintiff disputed the alleged late payments with SLMA on several occasions, over the telephone, by the U.S. Postal Service mail, and by facsimile transmission.

167. Despite Plaintiff's repeated disputes of his alleged late payments, SLMA proceeded to subsequently report Plaintiff as delinquent in furnishing information to the credit reporting agencies also named as defendants in this lawsuit.

168. In or about May 2010, and since then in monthly or other regular intervals, has furnished information to credit reporting agencies regarding Plaintiff's alleged late payment history, without noting that Plaintiff disputed the alleged late payments.

169. SLMA violated the MCDCA by communicating and/or threatening to communicate false information prohibited by Ann. Code Md, Commercial Law, §14-202, and further by failing to note that the information was disputed by the consumer.

170. As a result of the above violation of the MCDCA, SLMA is liable to Plaintiff for damages.

171. A violation of the MCDCA is by operation of law also a violation of the MCPA, for which SLMA is liable to Plaintiff for damages.

## COUNT VI.

### (Interference with Contract)

172.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

173.  SLMA knew or had knowledge of facts showing that Plaintiff had entered into contracts, and or other legally protected interests, for revolving credit and/or lines of credit with creditors including, but not limited to, American Express, Bank of America, Chase, and Citibank.

174.  SLMA deliberately interfered with the carrying out of the contracts, and or other legally protected interests, between Plaintiff and American Express, Bank of America, Chase, and Citibank.

175.  SLMA deliberately, maliciously, and/or wrongfully interfered with the business relationship existing between Plaintiff and American Express, Bank of America, Chase, and Citibank.

176.  SLMA deliberately, maliciously, and/or wrongfully interfered with the  legally protected interests that Plaintiff had with American Express, Bank of America, Chase, and Citibank.

177.  SLMA intentionally and/or without justification induced Plaintiff's several creditors, including but not limited to American Express, Bank of America, Chase, and Citibank., to breach or to otherwise render impossible the performance of the contracts, or other legally protected interests,  for revolving credit and/or lines of credit.

178.  As a direct and proximate result of SLMA's wrongful conduct, or at least subsequently thereto, Plaintiff's creditors either reduced or revoked the revolving credit accounts and/or lines of credit that were previously extended to Plaintiff.

179.  The reduction and revocation of the revolving credit accounts and/or lines of credit caused Plaintiff to suffer economic and non-economic damages.

180.  SLMA is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact.  The Plaintiff is entitled to an award of punitive damages from SLMA, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNT VII.

### (Interference with Economic Relationship)

181.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

182.  SLMA knew or had knowledge of facts showing that Plaintiff had entered into contracts, and or other legally protected interests, for revolving credit and/or lines of credit with creditors including, but not limited to, American Express, Bank of America, Chase, and Citibank.

183.  SLMA deliberately interfered with the carrying out of the contracts, and or other legally protected interests, between Plaintiff and American Express, Bank of America, Chase, and Citibank.

184.  SLMA acted intentionally and/or willfully in a manner calculated to cause damage and loss to Plaintiff in his lawful business and/or damage and loss to Plaintiff's economic rights.

185.  SLMA acted intentionally and/or willfully in a manner calculated to cause damage and loss to Plaintiff's economic rights.

186.  SLMA's actions were taken with the unlawful purpose of causing damage and loss without justifiable cause or right.

187.  SLMA's acts led to and resulted in Plaintiff sustaining actual damage and loss.

188. SLMA is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact. The Plaintiff is entitled to an award of punitive damages from SLMA, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNT VIII.

(Injurious Falsehood)

189. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

190. SLMA made false statements of fact about Plaintiff's property interest in his good name, reputation, business reputation, business integrity, trustworthiness, financial integrity, credit history, credit ratings, credit scores and/or credit worthiness, by furnishing erroneous, inaccurate, and/or incomplete information concerning Plaintiff's payment history.

191. By furnishing erroneous, inaccurate, and/or incomplete information concerning Plaintiff's payment history, SLMA's false statements were reasonably expected to affect the value of Plaintiff's property interest in his good name, reputation, business reputation, business integrity, trustworthiness, financial integrity, credit history, credit ratings, credit scores and/or credit worthiness.

192. SLMA was motivated by ill-will towards the Plaintiff.

193. SLMA made its false statements with knowledge of their falsity and/or reckless disregard for the truth.

194. As a result of SLMA's false statements, Plaintiff incurred economic and non-economic harm and damages.

195. SLMA is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact. The Plaintiff is entitled to an award of punitive damages from SLMA, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNT IX.

(Injurious Falsehood Amounting to Defamation)

196. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

197. SLMA made false statements of fact about Plaintiff's property interest in his good name, reputation, business reputation, business integrity, trustworthiness, financial integrity, credit history, credit ratings, credit scores and/or credit worthiness, by furnishing erroneous, inaccurate, and/or incomplete information concerning Plaintiff's payment history.

198. SLMA's false statements were reasonably understood to negatively and/or unfavorably reflect on the quality of Plaintiff's property interest in his good name, reputation, business reputation, business integrity, trustworthiness, financial integrity, credit history, credit ratings, credit scores and/or credit worthiness.

199. SLMA's false statements were reasonably understood to negatively and/or unfavorably reflect on the quality of Plaintiff's property interest in his business ventures.

200.  SLMA is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact.  The Plaintiff is entitled to an award of punitive damages from SLMA, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

**COUNT X.**

(Civil Conspiracy)

201.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

202.  There was an agreement, confederation, industry standard, course of conduct, open and notorious business practice, explicit understanding, and/or implicit understanding between SLMA and one or more of the named credit reporting agency defendants, to accomplish an unlawful act or acts.

203.  There was an agreement, confederation, industry standard, course of conduct, open and notorious business practice, explicit understanding, and/or implicit understanding between SLMA and each of the CRAs to use unlawful means to accomplish an act or acts not in itself, or themselves, illegal.

204.  The unlawful act or acts were violations of the federal Fair Credit Reporting Act, and similar laws of the state of Maryland with regard to ensuring maximum accuracy in credit reporting.

205.  The unlawful means used to accomplish acts not of themselves illegal, were furnishing and reporting credit information regarding Plaintiff, after having violated the federal Fair Credit Reporting Act, and similar laws of the state of Maryland including, but not limited to, establishing and following procedures to ensuring maximum accuracy in credit reporting, reinvestigating consumer disputes of

credit information, participating in such reinvestigations, furnishing information with maximum possible accuracy.

206. The referenced unlawful acts resulted in damage to the Plaintiff.

207. The unlawful means resulted in damage to the Plaintiff.

208. SLMA is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact. The Plaintiff is entitled to an award of punitive damages from SLMA, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNT XI.

### (Intentional Infliction of Emotional Distress)

209. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

210. SLMA made false statements of fact by furnishing erroneous, inaccurate, and/or incomplete information concerning Plaintiff's payment history.

211. SLMA's conduct was intentional and/or reckless.

212. SLMA's conduct was reckless in deliberate disregard of the high degree of probability that emotional distress would result.

213. SLMA's conduct was extreme and outrageous.

214. SLMA's conduct, and the foreseeable and reasonably expected consequences thereof, caused emotional distress to the Plaintiff.

215. The emotional distress suffered by Plaintiff was severe.

216. SLMA is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact. The Plaintiff is entitled to an award of punitive damages from SLMA, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNT XII.

(Breach of Contract)

217. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

218. Plaintiff and SLMA entered into a legally binding agreement concerning the making of a loan to Plaintiff to finance his daughter's post-secondary education, and the repayment of the loan.

219. Under the applicable terms of the loan, payments of principal and capitalized interest were to be deferred until six (6) months after Ms. Davenport's graduation or completion of studies.

220. Alternatively, SLMA granted Plaintiff's repeated requests for SLMA to exercise forbearance in order to allow Plaintiff to delay repayment of the loan until after his daughter had graduated or completed her studies.

221. Despite the terms of the agreement governing deferment, forbearance, and repayment, SLMA accelerated the payment schedule and required Plaintiff to make payments on the loan before Ms. Davenport's graduation or completion of studies.

222. SLMA's acceleration of the payment schedule was a material breach of the agreement between the parties.

223. SLMA's failure to abide by its own stated terms of deferment, forbearance, and delayed repayment, was a material breach of the agreement between the parties.

224. As a direct and proximate cause of SLMA's breach of the agreement between the parties, Plaintiff suffered damages.

225. SLMA is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact. The Plaintiff is entitled to an award of punitive damages from SLMA, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNTS OF LIABILITY AGAINST EQUIFAX

## COUNT XIII.

(Negligent failure to maintain and/or follow reasonable procedure to assure maximum possible accuracy of info reported)

226. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

227. Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the Plaintiff, as that term is defined in 15 U.S.C. § 1681a(d), and Ann. Code Md., Commercial Law, §14-1201(e).

228.  Such reports contained information about the account that was false, misleading and inaccurate.

229.  Equifax negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff, in violation of 15 U.S.C. § 1681e(b) and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

230.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damage as set forth herein.

231.  Equifax is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XIV.

(Willful failure to maintain and/or follow reasonable procedures to assure maximum possible accuracy of info reported)

232.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

233.  Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the Plaintiff, as that term is defined in 15 U.S.C. § 1681a(d) and Ann. Code Md., Commercial Law, §14-1201(e).

234.  Such reports contained information about the account that was false, misleading and inaccurate.

235.  Equifax willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff or in credit reports supplied to third parties, in violation of 15 U.S.C. § 1681e(b) and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

236.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

237.  Equifax is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n and Ann. Code Md., Commercial Law, §14-1213.

## <u>COUNT XV.</u>

(Negligent failure to adopt and/or follow reasonable procedures to insure proper re-investigation)

238.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

239.  Equifax negligently failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the Plaintiff's consumer reports as contained in its files pertaining to the Plaintiff or in credit reports supplied to third parties in violation of 15 U.S.C. § 1681i and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

240.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

241. Equifax is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XVI.

(Willful failure to adopt and/or follow reasonable procedures to insure proper re-investigation)

242. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

243. Equifax willfully failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the Plaintiff's consumer reports as contained in its files pertaining to the Plaintiff or in credit reports supplied to third parties in violation of 15 U.S.C. § 1681i and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

244. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

245. Equifax is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees he may recover therefore pursuant to 15 U.S.C. § 1681n and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XVII.

(Malicious defamation)

246.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

247.  Equifax maliciously defamed the Plaintiff by its knowing publication to third-parties reports containing the account, and that it was falsely reported as being in a delinquent status.

248.  Equifax had actual knowledge of the false, inaccurate and misleading nature of such information and published it despite having such knowledge.

249.  Equifax's actual knowledge of the falsity and/or reckless disregard for the truth demonstrates its malice and/or willful intent to injure the Plaintiff.

250.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

251.  Equifax is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact.  The Plaintiff is entitled to an award of punitive damages from Equifax, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNT XVIII.

(Civil Conspiracy)

252.   The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

253. There was an agreement, confederation, industry standard, course of conduct, open and notorious business practice, explicit understanding, and/or implicit understanding between SLMA and Equifax, to accomplish an unlawful act or acts.

254. There was an agreement, confederation, industry standard, course of conduct, open and notorious business practice, explicit understanding, and/or implicit understanding between SLMA and Equifax to use unlawful means to accomplish an act or acts not in itself, or themselves, illegal.

255. The unlawful act or acts were violations of the federal Fair Credit Reporting Act, and similar laws of the state of Maryland with regard to ensuring maximum accuracy in credit reporting.

256. The unlawful means used to accomplish acts not of themselves illegal, were furnishing and reporting credit information regarding Plaintiff, after having violated the federal Fair Credit Reporting Act, and similar laws of the state of Maryland including, but not limited to, establishing and following procedures to ensuring maximum accuracy in credit reporting, reinvestigating consumer disputes of credit information, participating in such reinvestigations, furnishing information with maximum possible accuracy.

257. The referenced unlawful acts resulted in damage to the Plaintiff.

258. The unlawful means resulted in damage to the Plaintiff.

259. Equifax is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact. The Plaintiff is entitled to an award of punitive damages from Equifax, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNTS OF LIABILITY AGAINST EXPERIAN

## COUNT XIX.

(Negligent failure to maintain and/or follow reasonable procedure to assure maximum possible accuracy of info reported)

260.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

261.  Experian prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the Plaintiff, as that term is defined in 15 U.S.C. § 1681a(d), and Ann. Code Md., Commercial Law, §14-1201(e).

262.  Such reports contained information about the account that was false, misleading and inaccurate.

263.  Experian negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff, in violation of 15 U.S.C. § 1681e(b) and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

264.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damage as set forth herein.

265.  Experian is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XX.

(Willful failure to maintain and/or follow reasonable procedures to assure maximum possible accuracy of info reported)

266.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

267.  Experian prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the Plaintiff, as that term is defined in 15 U.S.C. § 1681a(d) and Ann. Code Md., Commercial Law, §14-1201(e).

268.  Such reports contained information about the account that was false, misleading and inaccurate.

269.  Experian willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff or in credit reports supplied to third parties, in violation of 15 U.S.C. § 1681e(b) and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

270.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

271.  Experian is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XXI.

(Negligent failure to adopt and/or follow reasonable procedures to insure proper re-investigation)

272.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

273.  Experian negligently failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the Plaintiff's consumer reports as contained in its files pertaining to the Plaintiff or in credit reports supplied to third parties in violation of 15 U.S.C. § 1681i and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

274.   As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

275.  Experian is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XXII.

(Willful failure to adopt and/or follow reasonable procedures to insure proper re-investigation)

276.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

277.  Experian willfully failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the Plaintiff's consumer reports as contained in its files pertaining to the Plaintiff or in credit reports

supplied to third parties in violation of 15 U.S.C. § 1681i and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

278.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

279.  Experian is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees he may recover therefore pursuant to 15 U.S.C. § 1681n and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XXIII.

(Malicious defamation)

280.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

281.  Experian maliciously defamed the Plaintiff by its knowing publication to third-parties reports containing the account, and that it was falsely reported as being in a delinquent status.

282.  Experian had actual knowledge of the false, inaccurate and misleading nature of such information and published it despite having such knowledge.

283.  Experian's actual knowledge of the falsity and/or reckless disregard for the truth demonstrates its malice and/or willful intent to injure the Plaintiff.

284.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

285.  Experian is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact.  The Plaintiff is entitled to an award of

punitive damages from Experian, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNT XXIV.

(Civil Conspiracy)

286. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

287. There was an agreement, confederation, industry standard, course of conduct, open and notorious business practice, explicit understanding, and/or implicit understanding between SLMA and Experian, to accomplish an unlawful act or acts.

288. There was an agreement, confederation, industry standard, course of conduct, open and notorious business practice, explicit understanding, and/or implicit understanding between SLMA and Experian to use unlawful means to accomplish an act or acts not in itself, or themselves, illegal.

289. The unlawful act or acts were violations of the federal Fair Credit Reporting Act, and similar laws of the state of Maryland with regard to ensuring maximum accuracy in credit reporting.

290. The unlawful means used to accomplish acts not of themselves illegal, were furnishing and reporting credit information regarding Plaintiff, after having violated the federal Fair Credit Reporting Act, and similar laws of the state of Maryland including, but not limited to, establishing and following procedures to ensuring maximum accuracy in credit reporting, reinvestigating consumer disputes of credit information, participating in such reinvestigations, furnishing information with maximum possible accuracy.

291.  The referenced unlawful acts resulted in damage to the Plaintiff.

292.  The unlawful means resulted in damage to the Plaintiff.

293.  Experian is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact.  The Plaintiff is entitled to an award of punitive damages from Experian, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

## COUNTS OF LIABILITY AGAINST TRANS UNION

### COUNT XXV.

(Negligent failure to maintain and/or follow reasonable procedure to assure maximum possible accuracy of info reported)

294.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

295.  Trans Union prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the Plaintiff, as that term is defined in 15 U.S.C. § 1681a(d), and Ann. Code Md., Commercial Law, §14-1201(e).

296.  Such reports contained information about the account that was false, misleading and inaccurate.

297.  Trans Union negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the

Plaintiff, in violation of 15 U.S.C. § 1681e(b) and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

298. As a direct and proximate result of such conduct, the Plaintiff suffered actual damage as set forth herein.

299. Trans Union is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XXVI.

(Willful failure to maintain and/or follow reasonable procedures to assure maximum possible accuracy of info reported)

300. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

301. Trans Union prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding the Plaintiff, as that term is defined in 15 U.S.C. § 1681a(d) and Ann. Code Md., Commercial Law, §14-1201(e).

302. Such reports contained information about the account that was false, misleading and inaccurate.

303. Trans Union willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to the Plaintiff or in credit reports supplied to third parties, in violation of 15 U.S.C. § 1681e(b) and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

304.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

305.  Trans Union is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XXV11.

(Negligent failure to adopt and/or follow reasonable procedures to insure proper re-investigation)

306.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

307.  Trans Union negligently failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the Plaintiff's consumer reports as contained in its files pertaining to the Plaintiff or in credit reports supplied to third parties in violation of 15 U.S.C. § 1681i and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

308.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

309.  Trans Union is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XXVIII.

(Willful failure to adopt and/or follow reasonable procedures to insure proper re-investigation)

310. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

311. Trans Union willfully failed to adopt and/or follow reasonable procedures to insure the proper reinvestigation, accuracy, deletion and/or permanent suppression of inaccurate information appearing in the Plaintiff's consumer reports as contained in its files pertaining to the Plaintiff or in credit reports supplied to third parties in violation of 15 U.S.C. § 1681i and Ann. Code Md., Commercial Law, §§14-1205, 14-1208.

312. As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

313. Trans Union is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact, together with punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees he may recover therefore pursuant to 15 U.S.C. § 1681n and Ann. Code Md., Commercial Law, §14-1213.

## COUNT XXIX.

(Malicious defamation)

314. The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

315.  Trans Union  maliciously defamed the Plaintiff by its knowing publication to third-parties reports containing the account, and that it was falsely reported as being in a delinquent status.

316.   Trans Union had actual knowledge of the false, inaccurate and misleading nature of such information and published it despite having such knowledge.

317.  Trans Union's actual knowledge of the falsity and/or reckless disregard for the truth demonstrates its malice and/or willful intent to injure the Plaintiff.

318.  As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

319.  Trans Union is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact.  The Plaintiff is entitled to an award of punitive damages from Trans Union, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.


## COUNT XXX.

(Civil Conspiracy)

320.  The Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

321.  There was an agreement, confederation, industry standard, course of conduct, open and notorious business practice, explicit understanding, and/or implicit understanding between SLMA and Trans Union, to accomplish an unlawful act or acts.

322.  There was an agreement, confederation, industry standard, course of conduct, open and notorious business practice, explicit understanding, and/or implicit understanding between SLMA and Trans Union to use unlawful means to accomplish an act or acts not in itself, or themselves, illegal.

323.  The unlawful act or acts were violations of the federal Fair Credit Reporting Act, and similar laws of the state of Maryland with regard to ensuring maximum accuracy in credit reporting.

324.  The unlawful means used to accomplish acts not of themselves illegal, were furnishing and reporting credit information regarding Plaintiff, after having violated the federal Fair Credit Reporting Act, and similar laws of the state of Maryland including, but not limited to, establishing and following procedures to ensuring maximum accuracy in credit reporting, reinvestigating consumer disputes of credit information, participating in such reinvestigations, furnishing information with maximum possible accuracy.

325.  The referenced unlawful acts resulted in damage to the Plaintiff.

326.  The unlawful means resulted in damage to the Plaintiff.

327.  Trans Union is liable to the Plaintiff for the actual damages he has sustained by reason of such conduct, in an amount to be determined by the trier of fact.  The Plaintiff is entitled to an award of punitive damages from Trans Union, in an amount to be determined by the trier of fact, in an amount sufficient to punish it for its conduct as well as to serve as a deterrent to it and to others to prevent the occurrence of such egregious conduct in the future.

**WHEREFORE**, the Plaintiff demands judgment, jointly and severally, against SLMA, Equifax, Experian, and Trans Union on all Counts set forth above, in the amount of not less than Five Hundred Thousand Dollars ($500,000)  together with interest, costs, reasonable attorney's fees, and such other relief as may be just and proper.

## JURY TRIAL DEMAND

The Plaintiff hereby demands a jury trial on all causes of action asserted herein that are triable by jury.

Respectfully submitted,

_____/s/_____

Paul R. Rivera, Esq.
Bar No. 15364
PO Box 394
Rockville, MD 20848-0394
(301) 949-6367
Attorney for Plaintiff
*law.rivera@gmail.com*