IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES E. DAVENPORT,

  Plaintiff,

v.    Civil No. PJM 12-1475

SALLIE MAE, INC., et al.,

  Defendants.

## MEMORANDUM OPINION

James E. Davenport, *pro se*, has sued Sallie Mae, Inc., and SLM Corporation (collectively "Sallie Mae"), alleging numerous federal and state law violations resulting from Sallie Mae's reporting of Davenport's credit history to various credit reporting agencies. Sallie Mae has filed a Motion to Dismiss (Paper No. 26). Davenport has responded with a Memorandum in Opposition (Paper No. 31), and Sallie Mae has responded (Paper No. 41). For the reasons that follow, Sallie Mae's Motion to Dismiss (Paper No. 26) is **GRANTED IN PART** and **DENIED IN PART**.

### I.

On or about July 19, 2006, Davenport signed a Federal PLUS Loan Application and Master Promissory Note ("Note") in favor of Sallie Mae to obtain a loan to finance his daughter's post-secondary education. On December 4, 2006, Sallie Mae disbursed $6,800 of loan proceeds to Union College on behalf of the daughter. The daughter was continuously enrolled in college from the fall of 2006 until her graduation in May 2010.

Davenport alleges that his contract with Sallie Mae provided that repayment of the loan principal would be deferred during the period of his daughter's post-secondary studies and would only begin six-months after her graduation, with the understanding that in the meantime interest

would accrue and be capitalized. Sallie Mae contends that the original Note included no such deferment provision; to the contrary, it says, Davenport agreed to repay the loan in periodic installments beginning on December 4, 2006, the day of the disbursement for the loan to Union College. From early 2007 until approximately June 2010, Sallie Mae and Davenport engaged in several communications via e-mail, phone, and mail regarding their disagreement over when the repayment period of the loan would begin. Davenport alleges that, during this back and forth, Sallie Mae's representatives took contradictory positions regarding the date when his first repayment was supposedly due.

On or about May 24, 2010, Davenport received correspondence from Sallie Mae, stating that his loan repayment was 90-days overdue and that his delinquency had been reported to consumer credit reporting agencies ("CRAs"). Davenport informed three CRAs (Equifax, Experian, and Trans Union) that he disputed this.[1] After receiving notice from these CRAs that Davenport disputed its report, Sallie Mae states that it had verified the accuracy of the report, in consequence of which the CRAs ended their investigations. Davenport continues to dispute the accuracy of Sallie Mae's report. He submits that his credit rating suffered due to Sallie Mae's reporting to the CRAs.

In this suit, Davenport asserts twelve causes of action against Sallie Mae: (1) negligent violation of the Fair Credit Reporting Act ("FCRA"); (2) willful violation of the FCRA; (3) malicious defamation; (4) violation of the Fair Debt Collection Practices Act ("FDCPA"); (5) violation of the Maryland Consumer Debt Collection Act ("MCDCA") and consequent violation of the Maryland Consumer Protection Act ("MCPA"); (6) interference with contract; (7) interference with economic relationships; (8) injurious falsehood; (9) injurious falsehood

---

[1] Equifax, Experian, and Trans Union were also named as defendants in the Complaint. After the Court received notices of settlement as to Experian and Trans Union, they were dismissed from the case. Equifax has answered the Complaint but has yet to file any motions.

amounting to defamation; (10) civil conspiracy; (11) intentional infliction of emotional distress; and (12) breach of contract. Sallie Mae has moved to dismiss all counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Republican Party of N.C. v. Martin*, 980 F. 2d 943, 952 (4th Cir. 1992). Thus, to survive a 12(b)(6) motion, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). While the court liberally construes all documents filed by a *pro se* plaintiff and holds the pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal citations omitted), the complaint must still set forth sufficient facts "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

In weighing the legal sufficiency of the complaint, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). But such deference is not accorded to labels and legal conclusions, formulaic recitations of the elements of a cause of action, and bare assertions devoid of further factual enhancement. *Iqbal,* 556 U.S. at 678. In addition, the court may consider documents submitted in connection to the motion to dismiss so long as they "are referred to in the complaint and upon

which plaintiff relies in bringing the action." *Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998).

## III.

### A. Counts One and Two: Negligent and Willful Violation of FCRA

Sallie Mae argues that its report to the CRAs was accurate as a matter of law and, therefore, it cannot be held liable for what Davenport simply declares is an inaccurate report.[2] This argument completely ignores the scope of furnishers' FCRA duties and, in any case, is a premature dispute relating to the merits of the Complaint that cannot be decided at this early stage of litigation.

Davenport's FCRA causes of action allege violations of subsections (A) through (D) in § 1681s-2(b)(1), which provides that a furnisher of information is liable to the consumer when it has failed in at least one of the following duties:

> (1) To investigate with respect to the disputed information; (2) to review all relevant information provided by the CRA; (3) to report the results of its investigation to the CRA; [and] (4) if the investigation shows the disputed information is incomplete or inaccurate, to report those results to all other CRAs to which it furnished the original information . . . .

*Beachley v. PNC Bank, Nat. Ass'n*, 2011 WL 3705239, at *2 (D. Md. Aug. 22, 2011). Furnishers must review reports not only for inaccuracies in the information reported but also for omissions

---

[2] Sallie Mae also contends that Davenport cannot use the present FCRA action to collaterally attack the basis of its report. It is mistaken. Actions "brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit, while claims against furnishers . . . do not raise this consideration because the furnisher *is* the creditor on the underlying debt." *Saunders*, 526 F.3d at 150 (emphasis in original). Here, the FCRA dispute is not over the loan, but rather over the repayment arrangements and the status of Davenport's credit as reported to the CRAs by Sallie Mae as a furnisher of credit information. Davenport's challenge is, thus, not a collateral attack, but rather a direct challenge to the accuracy of Sallie Mae's information because the allegation is that Sallie Mae "did not have the legal right to declare the loan in default and thereby provide the false, derogatory information." *See Saunders v. Equifax Info. Servs., LLC.*, 3:05 CV 731, 2006 WL 2850647 (E.D. Va. Oct. 3, 2006) aff'd sub nom. *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008).

4

that render the reported information misleading, such as a failure to note a continuing consumer dispute. *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142, 150 (4th Cir. 2008).

To bring a cause of action under § 1681s–2(b), Davenport must establish: (1) that he notified the CRAs of the disputed information, (2) that the CRAs notified Sallie Mae of the dispute, and (3) that Sallie Mae then failed to investigate and modify the inaccurate information. *See Ausar-El v. Barclay Bank Delaware*, 2012 WL 3137151 (D. Md. July 31, 2012) (citations omitted). Emphatically, he "does not have to prove that the underlying allegations that gave rise to the dispute are true to recover." *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 968 (N.D. Ill. 2005).

The Court finds that Davenport has alleged sufficient facts to establish all the required elements of his FCRA claims. He has shown that he notified Experian, Equifax, and Trans Union of his disagreement with the accuracy of Sallie Mae's report. Further, it is uncontested that the CRAs notified Sallie Mae of the dispute and that Sallie Mae did not modify its report. Rather, Sallie Mae says it undertook to verify the information regarding Davenport's status, and concluded that its report was accurate. Davenport submits that a reasonable investigation would have shown otherwise.

It is generally a question of fact for the jury as to whether a reasonable investigation was conducted. *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 510 (D. Md. 2004) (citing *Bruce v. First U.S.A. Bank, N.A.*, 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000).

Sallie Mae's apparently shifting positions in its dealings with Davenport following execution of the Note certainly suffice to raise doubts about the reasonableness of its investigation. It allegedly conceded in phone conversations, for example, that his account was not past due through April, 2010; it acknowledged deferment and/or forbearance of repayment

5

through December, 2010; and it admitted via e-mail that the loan was in forbearance from February 19, 2007 through May 18, 2010. Despite this, Sallie Mae stuck by its guns, maintained that its investigation was reasonable, and insisted that its initial report to the CRAs was correct.

Whatever the merits of Sallie Mae's argument may be, the matter is before the Court on a Motion to Dismiss: At this juncture, Davenport has stated causes of action under the FCRA. *Republican Party of N.C. v. Martin*, 980 F. 2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint . . . [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

The Court denies Sallie Mae's Motion to Dismiss Counts 1 and 2.

### B. FCRA Preemption of State Law Claims

Davenport also alleges causes of action based on both state common law and state statutory law. In response, Sallie Mae argues that all the state law claims are preempted by the FCRA. The Court agrees with Sallie Mae in part and disagrees in part. As most of the courts (including the Fourth Circuit) have held or at least seemed to have held, the state common law claims survive preemption, but the state statutory claims do not.

In 1968, Congress enacted the FCRA to "safeguard the consumer in connection with the utilization of credit by requiring full disclosure of the terms and conditions of finance charges in credit transactions . . . ." *See* Pub. L. No. 90-321, 82 Stat. 146 (2003). Federal legislative authority to exclusively regulate the area of consumer credit reporting is found in the Supremacy Clause, which states that, "[the] Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI. The FCRA's comprehensive framework has evolved to

include two relevant provisions, § 1681h(e) and 1681t(b)(1)(F), which preempt inconsistent state laws.

Enacted in 1970 as a part of the original legislation, § 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

Section 1681t(b)(1)(F), a general preemption provision enacted in 1996—over twenty years after FCRA first took effect—provides, in relevant part:

> No requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under . . . section 1681s–2, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

15 U.S.C. § 1681t(b)(1)(F).

Section 1681h(e) only applies to "information disclosed pursuant to section 1681g, 1681h, or 1681m" of the title. But section 1681g and 1681h apply only to disclosures made by CRAs. See 15 U.S.C. § 1681g, § 1681h. And section 1681m applies only to users of consumer reports. See 15 U.S.C. § 1681m.

At the same time, section 1681(b)(1)(F), the general preemption provision, protects furnishers of information to CRAs as to "subject matter regulated under . . . section 1681s-2, which speaks to the responsibilities of such furnishers of information in general.

In enacting § 1681t(b)(1)(F) in 1996, Congress did not modify § 1681h(e), which gave rise to a problem: That is, § 1681h(e) is a preemptive statute with carve-outs, whereas § 1681t(b)(1)(F) looks like an across-the-board preemption provision.

Among the courts, there has been disagreement as to "how to reconcile these two seemingly overlapping preemption provisions." *Beuster v. Equifax Info. Servs.*, 435, F. Supp. 2d 471, 475 (D. Md. 2006). Although the Fourth Circuit has explicitly stated that it has yet to confront the apparent conflict, *Ross v. F.D.I.C.*, 625 F.3d 808, 814 n.* (4th Cir. 2010), several district courts, among them some in the Fourth Circuit, have reconciled the potential inconsistency by taking what they have termed the "statutory approach"— holding that § 1681t(b)(1)(F) applies only to state *statutory* claims while § 1681h(e) addresses only state *common law* claims. *Beuster*, 435 F. Supp. 2d at 478 (citations omitted). This approach, it is said, does not render 1681h(e) superfluous and instead interprets the two provisions to work concurrently, governing different aspects of state law. *Id.* (quoting *Barnhill v. Bank of Am., N.A.*, 378 F. Supp. 2d 696, 703 (D.S.C. 2005)). It also abides by the canon of statutory construction that the more specific provision should prevail over the more general. *Id.*; *see Morton v. Mancari, 417 U.S. 535, 550-51 (1974)* ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of a priority of enactment.") (citations omitted).

This Court will accept and apply the statutory approach and its supporting case law in the present case. Accordingly, Davenport's state statutory causes of action will be analyzed under 1681t(b)(1)(F) and his common law causes of action will be reviewed under § 1681h(e).

### 1. Count Five: State Statutory Claim

In a single count, Davenport alleges violations of two state statutes: the MCDCA and the MCPA.

Again, section 1681t(b)(1)(F) preempts state statutory claims that are based on the responsibilities of those who report credit information to CRAs. *See* 15 U.S.C. § 1681s-2(a)–(b) (encompassing the "[d]uty of furnishers of information to provide accurate information," which includes correcting any errors in reporting, and the duties of furnishers of information "[a]fter receiving notice ... of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," which includes conducting an investigation into the dispute and correcting any errors discovered with the CRAs).

Since the MCDCA and MCPA claims are entirely premised on Sallie Mae's reporting of inaccurate information with knowledge of its falsity, Count 5 alleges a willful breach of the responsibilities and duties contained in § 1681s–2 and "runs into the teeth of the FCRA preemption provision." *See Ross,* 625 F.3d at 813.

The Court therefore grants Sallie Mae's Motion to Dismiss as to Count 5.

### 2. Count Three and Counts Six Through Eleven: State Common Law Claims

Section 1681h(e) bars certain state common law causes of action, unless the information was furnished with malice. *Ross,* 625 F.3d at 814 (citation omitted). Thus, the Senate report regarding common-law defamation actions under this section states:

> Reporting agencies, their sources and the users of information are given immunity from libel or other suits as a result of information in their credit file disclosed to consumers pursuant to Section 1681(g), 1681(h), and 1681(m) unless the information was furnished with malice or willful intent to injure the consumer. *The immunity provisions under this section do not extend to information acquired by a consumer through other means.*

9

Meredith Schramm-Strosser, *The "not so" fair credit reporting act: federal preemption, injunctive relief, and the need to return remedies for common law defamation to the states*, 14 Duq. Bus. L.J. 165, 217 n.215 (2012) (emphasis added) (quoting S. Rep. No. 517, 91st Cong., 2d Sess., 6 (1970).

Focus is important:

Again, sections 1681g and 1681h apply only to disclosures made by CRAs. *See* 15 U.S.C. §§ 1681g, 1681h. Section 1681m applies only to users of consumer reports. *See* 15 U.S.C. § 1681m. But Davenport's claims do not fall into any of the categories covered by the preemption provision. Here, the information about his supposedly delinquent account was disclosed by Sallie Mae, not by the CRAs and not by a user of consumer reports. Sallie Mae was neither a CRA nor a user of Davenport's consumer report.[3]

Since Davenport's common law claims fall outside the scope of § 1681h(e), they are not barred by this provision and the Court need not determine whether the malice or willful intent exception applies. Nor, of course, are the claims covered by 1681t(b)(1)(F), since they are not brought pursuant to a state statute. In other words, the claims avoid preemption under the framework of the FCRA. *See Alston v. Cavalry Portfolio Servs.*, LLC, No. 8:12–cv–03589–AW, 2013 WL 665036, at *6 (D. Md. Feb. 22, 2013) ("If the preemption provision that applies to common law defamation claims does not apply to Plaintiff's defamation claim, then it is hard to see how the FCRA preempts Plaintiff's defamation claim.").

The Court denies the Motion to Dismiss as to Counts 3, 6, 7, 8, 9, 10, and 11.

---

[3] Any doubt about this conclusion is dispelled by statement in the Congressional Report that, "[t]he immunity provisions under this section do not extend to information acquired by a consumer through other means." Here, the consumer, Davenport, acquired the information as to his alleged delinquency from Sallie Mae. The immunity in 1681h(e) does not extend to furnishers who disclose the information to consumers.

### C. Count Four: Violation of FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The statute defines the term "debt collector" as any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," but explicitly excludes from that definition persons collecting or attempting to collect debts which they themselves originated. *Id.* § 1692a(6). This Court has previously explained that creditors collecting their own debts are not "debt collectors" for the purposes of the FDCPA. *See Ausar-El v. Barclay Bank Delaware*, 2012 WL 3137151, at *2 (D. Md. July 31, 2012) (Messitte, J.). Since Sallie Mae was at all relevant times acting as a creditor to collect a debt owed to itself – and not to a third party – it does not come within the FDCPA's definition of a debt collector.

In any case, even if the Court were to assume that Sallie Mae is a debt collector under the statute, Count 4 would still be dismissed because it is time-barred. *See* 15 U.S.C. § 1692k(d) ("[A]n action to enforce any liability created by this title may be brought . . . within one year from the date on which the violation occurs."). The statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the lawsuit. *Lembach v. Bierman*, No. 12–1723, 2013 WL 2501752 (4th Cir. June 12, 2013) (unpublished) (holding that the discovery rule applies to suits under the FDCPA). Davenport became aware of the credit reporting at issue on May 24, 2010, when he received a letter from Sallie Mae, and did not file the instant action until May 15, 2012, almost two years after he received notice of the injury.

The Court grants the Motion to Dismiss as to Count 4.

### D. Count Twelve: Breach of Contract

Under Maryland law, to state a claim for breach of contract, a plaintiff must plead the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation. *See RRC Northeast, LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 442 (Md. 2010). Sallie Mae argues that because the Promissory Note explicitly states that repayment was to begin upon disbursement of the loan, Davenport cannot show that it materially breached a contractual obligation by improperly accelerating the loan's payment schedule. The Court disagrees. Although it is true that the Note does not include a forbearance agreement, Davenport's breach of contract claim articulates a contractual obligation that Sallie Mae incurred as a result of subsequent oral modifications not within the original writing itself.

Maryland law allows "subsequent oral modification of a written contract," even where a contract provides "that it shall not be varied except by an agreement in writing," so long as it "appear[s] that the parties understood that this clause was waived"—either "by implication" or "by express agreement." *Taylor v. University Nat'l Bank*, 263 Md. 59, 63 (1971) (quoting *Freeman v. Stanbern Const. Co.*, 205 Md. 71, 79 (1954)). Here, according to Davenport, Sallie Mae representatives expressly agreed via telephone calls and correspondence to forbearance of Davenport's repayment plan until December 2010, i.e., that a new contractual obligation came into being regarding the repayment schedule.

In this regard, "[t]he conduct of parties to a contract may be evidence of a subsequent modification of their contract." *Id.* at 94 (citations omitted). Here, Sallie Mae did not claim legal entitlement to repayment until January 2010, over three years after the disbursement of the loan principal in 2006, which it has also contended was the date repayment was due. Quite clearly, Count 12 states a cause of action for breach of contract.

The Court denies the Motion to Dismiss Count 12.

### IV.

For the foregoing reasons, the Court **GRANTS** Sallie Mae's Motion to Dismiss (Paper No. 26) as to Counts 4 and 5, and **DENIES** the Motion as to Counts 1, 2, 3, 6, 7, 8, 9, 10, 11 and 12.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**August 2, 2013**