FILED _____ ENTERED
LODGED _____ RECEIVED

JUN - 5 2015

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JAMES E. DAVENPORT,** | * |
| | * |
| Plaintiff, | * |
| v. | *      Civil No. PJM 12-1475 |
| | * |
| **SALLIE MAE, INC., *et. al.*,** | * |
| | * |
| Defendants. | * |

### MEMORANDUM OPINION

James Davenport, *pro se*, has sued Sallie Mae, Inc., and SLM Corporation (since renamed, so collectively, "Navient"), alleging numerous federal and state law violations resulting from Navient's reporting of Davenport's credit history to various credit reporting agencies. Navient has filed a Motion for Summary Judgment (Paper No. 99). For the reasons that follow, Navient's Motion for Summary Judgment will be **GRANTED**.

### I.

On or about July 19, 2006, Davenport signed a Federal PLUS Loan Application and Master Promissory Note ("Note") in favor of Navient to obtain a loan to finance his daughter's post-secondary education. On December 4, 2006, Navient disbursed $6,800 of loan proceeds to Union College on behalf of Davenport's daughter. The daughter was continuously enrolled in college from the fall of 2006 until her graduation in May 2010.

Davenport alleges that his contract with Navient provided that the repayment of the loan principal would be deferred during the period of his daughter's post-secondary studies and would only begin six months after her graduation, with the understanding that in the meantime interest would accrue and be capitalized. Navient contends that the original Note included no such

– 1 –

deferment provision; to the contrary, it says Davenport agreed to repay the loan in periodic installments beginning on December 4, 2006.

From early 2007 until approximately June 2010, Navient and Davenport had numerous communications via email, phone, and ordinary mail regarding their disagreement over when the repayment of the loan would begin. During these communications, Davenport received letters granting him: a forbearance from February 19, 2007 through February 18, 2008 (Pl.'s Resp. Ex. 2); another forbearance from February 19, 2008 through February 18, 2009 (*id.* Ex. 4); and a third from February 19, 2009 through February 18, 2010 (*id.* Ex. 6). The first payment on the last forbearance was originally due on March 18, 2010. *Id.* Ex. 8.

On April 2, 2010, Navient sent Davenport a late notice for failure to pay as of March 18, 2010. Def.'s Mot. Ex. B (Dav. Dep. 48:20–49:2; Ex. 5). On April 9, 2010, Davenport called Navient and, still believing that the original deal only required payments to begin 6 months after his daughter graduated (i.e., the end of 2010), again sought delay of the first payment.

Navient again agreed to delay the payments, though there is disagreement as to the nature of that delay. Davenport suggests that Navient agreed to a 10-month *forbearance*, until December 2010. On April 9, 2010, Navient sent Davenport two letters. The first acknowledges a ten-month forbearance beginning on "February 19, 2009 [sic]"; the second advises that his first payment would be due on May 18, 2010. Pl.'s Resp. Exs. 9, 10.

Navient, on the other hand, argues that Davenport asked for (and was mistakenly granted) a *deferment*. Because the deferment was keyed to his daughter's school schedule, Navient applied a deferment to his account from January 5, 2010, through May 5, 2010. To keep the bookkeeping consistent, this required an *ex post facto* change of the prior forbearance's end date from February 18, 2010, to January 4, 2010.

On April 16, 2010, Navient says it realized that Davenport did not qualify for a deferment and therefore removed it from his account. Because of the *ex post* change in the end date of his prior forbearance to January 4, 2010, Navient concluded that Davenport in fact had been delinquent since January 5, 2010. Accordingly, on April 16, 2010, Navient sent three letters to Davenport advising him that the deferment had been removed, that he was more than 60-days delinquent, and that he needed to begin payment right away in the amount of $334.95. Def.'s Mot. Ex. A (Austin Dec., Exs. 4–6).

On April 19, 2010, Davenport called to dispute this change and did so again via a letter dated April 22, 2010. In the letter, he expressed frustration with Navient's process and stated that he had already elected forbearance in conversations with Navient representatives. Pl.'s Resp. Ex. 12. He referenced the April 9, 2010 letter from Navient confirming that selection. Davenport requested a full statement of his account, an indication of whether the account was current, and a verification in writing of any adverse statements Navient might have communicated to any credit bureaus with respect to his account.

Nonetheless, on April 30, 2010, Navient sent notice of his delinquency to the Credit Reporting Agencies ("CRAs"). Def.'s Mot. Ex. A (Austin Dec. ¶ 23, Ex. 8).

On or about May 24, 2010, Davenport received correspondence from Navient stating that his loan repayment was 90-days overdue and that his delinquency had been reported. Pl.'s Resp. Ex. 13. Davenport informed the three CRAs (Equifax, Experian, and Trans Union) that he disputed the report.[1] On August 23 and 24, 2010, Navient received the first two automated consumer dispute verifications ("ACDVs") regarding Davenport's dispute. Navient received two more ACDVs on October 13, 2010. Def.'s Mot. Ex. C (Considine Dec. ¶ 9, Ex. 1).

---

[1] Equifax, Experian, and Trans Union were also named as defendants in the Complaint. After the Court received notices of settlement as to these defendants, they were dismissed from the case.

Navient states that it verified the accuracy of its report that Davenport was delinquent and notified the CRAs, after which the CRAs ended their own investigations. Davenport disputes the accuracy of Navient's report and submits that his credit rating suffered because of Navient's reporting to the CRAs, triggering a host of damages. These included, among others: the loss or dramatic reductions of several business lines of credit; the loss of an investment opportunity; an increase in his car insurance premiums; and emotional distress.

At some point in May 2010, Davenport again requested and received a forbearance that was retroactively applied to the previously delinquent period. Def.'s Mot. Ex. A (Austin Dec. ¶ 24; Ex. 9). Navient states that it has not reported any further delinquency on Davenport's loan beyond the April 30, 2010 delinquency. *Id.* ¶ 25; Def.'s Mot. Ex. B (Davenport Dep., 92:17–21). Pursuant to Navient's policy, however, a prior delinquency report to the CRAs is not removed when a retroactive forbearance is applied that covers the delinquency period. Def.'s Mot. Ex. C (Considine Dec. ¶ 24).

Davenport's Complaint in this Court originally asserted twelve causes of action against Navient: (1) negligent violation of the Fair Credit Reporting Act ("FCRA"); (2) willful violation of the FCRA; (3) malicious defamation; (4) violation of the Fair Debt Collection Practices Act ("FDCPA"); (5) violation of the Maryland Consumer Debt Collection Act ("MCDCA") and consequent violation of the Maryland Consumer Protection Act ("MCPA"); (6) interference with contract; (7) interference with economic relationships; (8) injurious falsehood; (9) injurious falsehood amounting to defamation; (10) civil conspiracy; (11) intentional infliction of emotional distress; and (12) breach of contract.

The Court dismissed Counts 4 and 5 in ruling on Navient's prior Motion to Dismiss (Paper No. 26), concluding that the FDCPA did not apply to Navient as it is not a "debt

collector" as provided for in the statute, and because the state statutory claims were preempted by § 1681t(b)(1)(F) of the FCRA. *See* Paper No. 60 (Memorandum Opinion). Following discovery, Navient now moves for summary judgment on the remaining claims.

## II.

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean, however, that "*some* alleged factual dispute between the parties" defeats the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original). Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* Further, "[a] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (internal quotation and citation omitted).

Additionally, although federal courts must liberally construe a *pro se* litigant's claims, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012). The court need not ignore a failure to allege facts which set forth a cognizable claim for relief. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## III.

### A.    Counts One and Two: Negligent and Willful Violation of the FCRA

#### 1.    Negligent Violation of the FCRA

Navient argues that it is entitled to summary judgment because its report to the CRAs was accurate as a matter of law and, as a result, it cannot be liable. It argues further that, even if

– 5 –

the information provided was inaccurate, Navient nonetheless conducted a reasonable investigation and for that reason as well it cannot be liable under the FCRA. Finally, Navient argues that Davenport cannot show that he suffered an injury as a result of Navient's investigation of the disputes received from the CRAs. Without being able to show that any "actual damages" flowed from Navient's purported violation, it argues, the claim must be dismissed.[2]

15 U.S.C. § 1681s-2(b) imposes duties upon furnishers of credit information upon being provided notice of a dispute of the completeness or accuracy of any information provided to a CRA, including: (A) conducting an investigation with respect to the disputed information; (B) reviewing all relevant information provided by the consumer reporting agency; (C) reporting the results of the investigation to the CRA; and (D) if the investigation finds that the information is incomplete or inaccurate, reporting those results to all other CRAs to which it furnished the original information. Accordingly, to bring a claim under § 1681s-2(b) of the FCRA, Davenport must establish: (1) that he notified the CRAs of the disputed information; (2) that the CRAs notified Navient of the dispute; and (3) that Navient then failed to investigate and modify the inaccurate information. *See Ausar-El v. Barclay Bank Delaware*, 2012 WL 31375151, at *3 (D. Md. July 31, 2012) (citations omitted).

Generally, whether a furnisher conducted a reasonable investigation is a question of fact for the jury. *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 510 (D. Md. 2004). Summary judgment is proper only if the "reasonableness of the defendant's procedures is beyond question and if the plaintiff has failed to adduce evidence that would tend to prove the

---

[2] Naivent has reprised several arguments already raised on its Motion to Dismiss and rejected by the Court. The first of these is the suggestion that Davenport cannot use the present FCRA action to collaterally attack the basis of its report. As before, Navient is mistaken. *See* Paper No. 60 (Memorandum Opinion) at 4 n.2.

investigation was unreasonable." *Alston v. United Collections Bur., Inc.*, 2014 WL 859013, at
*6 (D. Md. Mar. 4, 2014).

There exists, then, a genuine dispute of material fact as to whether or not Navient
conducted a reasonable investigation, since it cannot be said that its procedures were beyond
question. While Navient argues that it conducted a reasonable investigation when it reviewed its
own records, including the records of phone conversations with Davenport that also identify
*when* correspondence was sent to him, Def.'s Mot. at 11, this review apparently did not include
*what* the correspondence sent to Davenport actually said. The correspondence clearly suggests
that Davenport had been granted a forbearance running until February 18, 2010, and another
running until May 18, 2010, meaning that he could not have been 90-days delinquent on April
16, 2010. The basic correspondence history also tends to support Davenport's account that, on
April 9, 2010, he requested and was granted a forbearance. *See* Pl.'s Resp. Ex. 20 at 2. Navient
argues that it is limited as to the scope of the investigation by the information provided by the
ACDVs, but a cursory review of its own documents might well have revealed that there was at
least some legitimate confusion as to when Davenport's first payment was due, calling into
question the accuracy of his alleged 90-day delinquency.

### 2. Actual Damages

It is not enough, however, to show that a defendant violated § 1681s-2(b) to survive
summary judgment. A failure to establish damages would still warrant summary judgment in
favor of a defendant. *See Tinsley v. TRW, Inc.*, 879 F. sup. 550, 552 (D. Md. 1995) ("The
absence of any economic damages dooms Plaintiff's venture in this Court."); *Spector v. Experian
Info. Servs. Inc.*, 321 F. Supp. 2d 348, 356 (D. Conn. 2004) ("In order to survive a summary
judgment motion on a claim of negligent violation of the FCRA, a plaintiff must provide some

evidence from which a reasonable fact-finder could conclude that she suffered actual damages as a result of defendant's actions.").

The FCRA provides that for negligent violations a claimant may recover "any actual damages sustained . . . as a result of the failure," 15 U.S.C. § 1681o. "Actual damages" do not include nominal damages under the FCRA. *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 346 (N.D. Ill. 2002); *see also Wright v. TRW, Inc.*, 872 F.2d 420 (4th Cir. 1989) (TABLE) (concluding that, absent a willful violation, no nominal damages should be awarded without a separate showing of actual damages). Indeed, the Fourth Circuit has noted that the statutory requirement of "actual damages" acts as a "gatekeeping function [to avoid] tremendous overcompensation of plaintiffs whose damages evidence fails to establish any meaningful injury at all." *Doe v. Chao*, 306 F.3d 170, 181 n.6 (4th Cir. 2002) (evaluating the "actual damages" requirement of the Stored Communications Act); *see also Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 642, 654 (E.D. Va. 2010) ("There is no reason in principle or in statutory language that the definition of 'actual damages' under the FCRA should be different from that under the [Stored Communications Act]."). This precludes the kind of minor injury "that might support a nominal damages award." *Doe*, 306 F.3d at 181 n.6.

The most serious harm that Davenport claims is that, as a result of Navient reporting his purported $334.95 delinquency to the CRAs, he lost some $140,000 in available lines of credit. But the evidence does not support Davenport's claim that his loss of available credit was caused by Navient's FCRA violation. On June 21, 2010, Citi informed Davenport that it would close his $50,000 line of credit because (1) the proportion of balances to credit limits was too high on his revolving accounts; (2) he had too many bank or national revolving accounts; and (3) the amount owed on the revolving accounts was too high. Def.'s Mot. Ex. B (Dav. Dep. Ex. 34).

On July 26, 2010, Chase sent two letters to Davenport, the first reducing his credit line on one account from $33,100 to $21,600, and the other closing an $18,000 account because the balance owed on his revolving accounts was too high and because the balance was too high as compared to the credit limit. *Id.* (Dav. Dep. Ex. 35, 36).

None of the stated reasons for Davenport's lost credit can be tied to a reported delinquency in his loan repayments. Quite simply, Davenport lost credit lines because he had too much open credit. Moreover, even if Navient's reporting had triggered Davenport's loss of credit, his claim would still fail, since the alleged lost lines of credit occurred prior to Navient's receiving a dispute notification or having the opportunity to investigate that dispute.

Davenport cannot recover for harms that occurred prior to the violation, *i.e.*, prior to Navient's failure to conduct a reasonable investigation upon receipt of the disputes in August and October 2010. *See Van Veen v. Equifax, Inc.*, 844 F. Supp. 2d 599, 609 (E.D. Pa. 2012) ("Plaintiff does not have a cause of action for Defendant's alleged inaccurate reporting. Rather, Plaintiff can recover only for Defendant's alleged failure to conduct a reasonable investigation . . . . Accordingly, Plaintiff can recover only for those damages caused by Defendant's unreasonable investigations."). Navient's purported violation of the FCRA for failing to reasonably investigate Davenport's dispute in August 2010 could not have caused his loss of credit in June or July 2010. The same holds true for a letter Davenport received from Bank of America on July 29, 2010, reducing his credit line from $50,000 to $1,900. Although Davenport produced two other letters regarding his credit line from Bank of America dated June 13, 2011, and February 2, 2012, neither identified his delinquency in repaying loans as a reason for its decisions. *See* Pl.'s Resp. Ex. 18, D0180; D0184.

The remaining damages Davenport claims are too speculative to survive a motion for summary judgment. He says he lost employment opportunities, but does not provide a single example where the reported delinquency had any bearing on a hiring decision. *See* Def.'s Mot. Ex. B (Dav. Dep. 111:21–113:7). He also claims that he lost a potential business venture, but that assertion is likewise wholly speculative and cannot withstand scrutiny. *See Tinsley*, 879 F. Supp. at 552. The same holds true with respect to Davenport's claim that he was chilled from even applying for a home loan refinance. There can be no compensable injury when he never even applied for such refinancing. *Id.* Davenport claims that his car insurance rates went up after the reporting, but even he admits that he was speculating that the reporting was a factor in the rate increase. Def.'s Mot. Ex. B (Dav. Dep. 133:21–134:2). Although a subsequent application for car insurance quoted a price higher than Davenport expected, citing delinquency as one factor, the application occurred years later and first relied on the fact that Davenport had a too high "proportion of revolving balances to revolving credit limits." This is too attenuated from the reported delinquency to have been caused by the reported delinquency.

Finally, Davenport has claimed compensatory damages for emotional distress attendant to the credit issues. The Fourth Circuit has "warned that not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 241 (4th Cir. 2009). For that reason, "[a]n award of compensatory emotional distress damages requires evidence establishing that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Doe*, 306 F.3d at 180 (internal quotation and citation omitted). That is, a "plaintiff's own conclusory allegations that he felt 'embarrassed,' 'degraded,' or 'devastated,' and suffered a loss of self-esteem, will not

suffice to create a disputed issue of material fact for the jury regarding the presence of compensable emotional distress." *Id.*

Further, "a showing of 'very minor emotional distress,' which, one supposes, would have to include *any* amount of momentary annoyance, angst, or irritation that might support a nominal damages award, cannot possibly suffice to establish 'actual damages.'" *Id.* at n.6.   As an example of what would suffice, the Fourth Circuit has suggested that when "a plaintiff can produce evidence that emotional distress caused chest pains and heart palpitations, leading to medical and psychological treatment which included a formal diagnosis . . . as well as necessitated prescription medication, it is clear that some amount of compensatory damages for emotional distress is warranted." *Id.*

Davenport's claims for emotional distress do not rise above conclusory assertions that he suffered embarrassment and stress related to his credit issues.  He has offered no evidence sufficient to show demonstrable emotional distress.  Since § 1681o of the FCRA does not support an award of nominal damages for such "minor emotional distress," there is no genuine dispute of a material fact regarding whether Davenport is entitled to "actual damages" as a result of Navient's negligent violation of the FCRA.  Accordingly, summary judgment on Count One is granted in favor of Navient.

### 3. Punitive Damages for Willful Violations of the FCRA

15 U.S.C. § 1681n provides that, for willful violations of the FCRA, a plaintiff may recover actual or statutory damages, punitive damages, as well as attorneys' fees and costs.  This may occur even without a showing of "actual damages." *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142, 152 (4th Cir. 2008).  To establish a willful violation, Davenport would have to show that Navient "knowingly and intentionally committed an act in conscious disregard

for the rights" of the consumer. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001).

The record does not support such a finding. The record is clear that, at worst, Navient's conduct was negligent. As a large company with numerous employees working in its call centers, it is apparent that Navient's proverbial left hand did not know what its proverbial right hand was doing when granting and removing forbearances from Davenport's account. To be sure, Navient's process for reviewing payment disputes, one where it does not even review its own correspondence with a customer, is also wanting. But this is a far cry from the level of knowing and intelligent commission of acts in conscious disregard for the rights of its customers. Although this process undoubtedly caused Davenport frustration, it does not constitute a willful violation of the FCRA. Davenport is not entitled to any damages under § 1681n, and summary judgment is granted in favor of Navient as to Count Two.

### B.    Count Three and Counts Six Through Eleven: State Common Law Claims

Davenport has also asserted various common law actions. These include: malicious defamation; interference with contract; interference with economic relationships; injurious falsehood; injurious falsehood amounting to defamation; civil conspiracy; and intentional infliction of emotional distress.

The standards for each of these claims are as follows:

For defamation: Davenport must show: "(1) that the defendant made a defamatory communication, *i.e.*, that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in

communicating the statement; and (4) that the plaintiff suffered harm." *Peroutka v. Streng*, 695 A.2d 1287, 1293 (Md. Ct. Spec. App. 1997).

"A claim for tortious interference with contract requires that the defendant know of an existing contract and engage in improper conduct to induce a third party's breach of that contract." *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013).

For interference with economic relations, Davenport must show: "(1) intentional and willful acts; (2) calculated to cause damage to [his] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of [Navient]; and (4) actual damages and loss resulting." *Kramer v. Mayor and City Council of Baltimore*, 723 A.2d 529, 540 (Md. Ct. Spec. App. 1999).

Injurious falsehood consists of "the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general, or even to some element of his personal affairs, of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage." *Beane v. McMullen*, 291 A.2d 37, 48 (Md. 1972). "The plaintiff must prove . . . that the publication has played a material and substantial part in inducing others not to deal with him, and that as a result he has suffered special damage." *Id.*

Finally, a claim for intentional infliction of emotional distress has four elements: "(1) The conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; (4) the emotional distress must be severe." *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000).

As to all of these claims, Navient argues that it did not act with the requisite knowledge, intent, or malice to establish liability.  Navient also argues that the defamation claim is barred by the statute of limitations.[3]  Davenport responds that Navient's maliciousness is evidenced by a letter it sent him stating: "Your account has been reported to the consumer credit reporting agencies . . . .  Your credit rating has been damaged."  Pl.'s Resp. Ex. 13.  According to Davenport, this letter connotes a considered and intentional decision on the part of Navient to damage his credit rating.

The Court disagrees with Davenport.  As noted earlier, Navient's behavior amounts to at most negligence, but does not constitute the malice or willfulness associated with these tort claims.  Additionally, Navient is correct that Davenport's defamation claim is barred by the one-year statute of limitations.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-105.  Absent any underlying tort, the Court likewise concludes that no civil conspiracy exists.

Accordingly, summary judgment is granted in favor of Navient as to Count Three and Counts Six through Eleven.

C.     **Count Twelve: Breach of Contract Claim**

Finally, Davenport claims that Navient breached its contract with him by accelerating his payment schedule after previously agreeing to an oral modification to delay his payments via forbearance.  Navient responds that any forbearance or deferment granted to him does not constitute a contract modification, inasmuch as no consideration flowed back to Navient and so the modification would be gratuitous.

---

[3] Navient has copied and pasted into its Motion for Summary Judgment another argument previously raised and rejected by this Court at the Motion to Dismiss stage—that Davenport's state common law claims are preempted by the FCRA.  As Navient makes the same argument word-for-word as it did before, the Court refers Navient to its prior reasoning rejecting that argument.  *See* Paper No. 60 (Memorandum Opinion) at 6–10.

Both arguments, in the Court's view, miss the mark. The harm Davenport has claimed here is not, in truth, a breach of the contract. Rather, the harm alleged is that Navient reported his purported breach to third parties, ultimately damaging his credit. The obligations under the Note were performed: Navient disbursed the loan in 2006 and, from all accounts, apart from the periods of forbearance and deferment, Davenport has made his payments on the loan with no further delinquency reported by Navient. Moreover, although Navient may have briefly accelerated the payment schedule on April 16, 2010, by May 2010 it did again grant Davenport the forbearance he believed he was entitled.[4] No breach of contract occurred.

Summary Judgment is therefore granted in favor of Navient as to Count Twelve.

## IV.

For the foregoing reasons, the Court **GRANTS** Navient's Motion for Summary Judgment (Paper No. 99) and the case will be **DISMISSED WITH PREJUDICE**.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**June 5, 2015**

---

[4] In its Opinion ruling on Navient's Motion to Dismiss, the Court reasoned that Davenport had alleged a plausible claim for relief with respect to its breach of contract claim because it was plausible that, in exchange for consideration, Navient might have orally modified the Note with respect to the payment schedule. On the developed record, however, it is clear that no consideration flowed back to Navient in exchange for such forbearance— meaning any delay in the payment schedule was a gratuitous promise by Navient. "[T]he obligee's mere gratuitous forbearance from exercising its legal rights under the instrument of indebtedness has not been held to create an agreement to extend the period of indebtedness." *Fed. Deposit Ins. Corp. v. Louisiana Nat. Bank*, 653 F.2d 927, 940 (5th Cir. 1981); *see also Anderson v. U.S. Life Ins. Co.*, 2014 WL 4987207, at *6 (W.D.N.C. Oct. 7, 2014) ("a gratuitous promise unsupported by consideration is unenforceable and will not support the assertion of an actionable claim."). To the extent Davenport claims he relied on that promise to his detriment, as explained above, no damages flowed from Navient's alleged breach.

– 15 –